Texas & Pacific Railway Company v. T. M. White.

Decided April 16, 1904.

**1.—Carriers of Live Stock—Overloading—Pleading.**

Where, in an action against a carrier for injury to live stock shipped under a contract by the terms of which plaintiff, the shipper, assumed the risks of danger from overloading, the defendant pleaded that the cars were overloaded, no pleading on the part of plaintiff was necessary to rebut that defense and to warrant a charge submitting that issue.

**2.—Same—Value at Destination.**

Where horses are shipped on a through contract over connecting lines, and suit is brought against the initial line for injury occurring during the shipment, the fact that the contract limits the liability of the defendant to injury occurring on its own line does not make the value of the horses at the last point on defendant's line the measure of damages, but such measure is their value at the point of destination, and it is immaterial whether or not defendant had notice that they were intended for sale at the point of destination.

**3.—Same—Evidence of Value—Good Condition.**

Where plaintiff's witness testified as to the value of the horses at their destination, had they arrived in good condition, his testimony was not an opinion and subject to objection on the ground that he did not define what he understood "good condition" to be, since defendant, if he deemed that term not sufficiently explicit, could have, by cross-examination, ascertained what the witness meant thereby.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

*T. J. Freeman* and *Head & Dillard,* for appellant.

*Gross & Gross,* for appellee.

RAINEY, Chief Justice.—Appellee sued the railway company to recover damages to horses shipped from Colorado, Texas, to Florence, Ala. Judgment was rendered for appellee, and the railway company appeals.

The evidence shows that plaintiff delivered to the railway company, at Colorado, Texas, for shipment to Florence, Ala., said horses. A contract was there entered into which stipulated that the railway company should not be bound beyond its terminus, which was Memphis, Tenn.; that plaintiff should at his own risk and expense load, unload, etc.; that he assumed all risk of unloading cars, fright of animals or crowding one upon another, and "that in all cases when said first party (railway company) shall furnish for the accommodation of said second party (plaintiff) laborers to assist in loading or unloading his stock, they shall be entirely subject to his orders and deemed his employes while so engaged, and he hereby agrees to hold said party harmless on account of their acts." One of the cars furnished was unfit for the transportation of stock, by reason of which and the negligent handling of the train said horses were damaged on appellant's line in an amount equal to the sum assessed by the verdict of the jury.

One paragraph of the court's charge was: "If you believe from the evidence that plaintiff caused defendant's employes to overload said cars, if they were overloaded, and that such overloading, if any, of said cars caused any part of the damage to plaintiff's horses, if any, you will find a verdict for defendant as to such damage, if any, so caused by such overloading, if any, of said cars; but on the other hand, if you belivee from the evidence that plaintiff did not cause defendant's employes to overload said cars, if they were overloaded, then defendant would be liable for the damage, if any, resulting to plaintiff's horses from such overloading, if any."

Appellant complains of the latter part of this charge wherein the jury are instructed that if plaintiff did not cause defendant's employes to overload said cars, defendant would be liable for the damages resulting from such overloading; the contention of appellant being, in effect, that plaintiff, by his contract, assumed the risk of overloading, and in order to place liability on defendant it was necessary to plead such facts as would relieve him from his contract. The appellant plead that the cars were overloaded, etc.

Plaintiff's testimony is to the effect that he was not present when the cars were loaded, which was done without his instructions, and the effect of his testimony is that the injury to the horses was occasioned by the defective car and rough handling of the train. The issue of overloading having been presented by the appellant, we think no pleading was necessary on the part of plaintiff to rebut appellant's defense, and therefore there is no error in the charge complained of.

There was no error in the court charging that the measure of plaintiff's damages would be the value of his horses at the place of their destination for those that were killed, and the difference in such value for those that were injured, and in not confining the value to Memphis, defendant's terminal. The final destination of the horses was Florence, Ala., and they were so billed. Defendant undertook to transport them to its terminal and there deliver them to its connecting carrier for delivery at Florence. While the defendant, under the contract, could not be held liable for damages occurring on the other road, yet in a case like this the value at the point of final destination controls. Reeves v. Railway Co., 11 Texas Civ. App., 514, 15 Texas Civ. App., 157, 32 S. W. Rep., 920; New York L. E. & W. Railway Co. v. Estill, 147 U. S., 591, at p. 616; Missouri Pac. Ry. Co. v. Fagan, 72 Texas, 127.

Whether or not appellant had notice that said horses were intended for sale at Florence, the point of destination, is immaterial. The measure of damages is the same whatever intention was entertained for their disposition. Gulf C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42, 33 S. W. Rep., 109; Railway Co. v. Estill, supra.

Testimony was admitted over the objections of appellant, showing the value of the horses had they arrived in Florence in "good condi-

tion," the objection being that it was "an opinion and conclusion of the witness, and not based upon a sufficient statement of the facts as to what the witness would consider a good or proper condition." It was not error to admit this testimony. The term "good condition" is sufficiently explicit, and if appellant desired to test what the witness meant by the use of said term, it could have done so by cross-examination.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.