Revised September 24, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-31283
Summary Calendar

In The Matter of:  MICKEY O'CONNOR,

Debtor,

----------------------

FRANK MCGEE,

Appellant,

VERSUS

MR. HUGH O'CONNOR,

Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

September 16, 1998

Before  DAVIS, DUHÉ, and PARKER, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

The district court affirmed the bankruptcy court's holding that two proofs of claim survived attacks that:  (1) they were the result of a sham transaction, (2) former Article 1899 of the Louisiana Civil code defeats the claim, and (3) under Louisiana law, the debt on which the claims were premised was prescribed.

The Trustee appeals.  We affirm.

## BACKGROUND

On September 29, 1982, Hugh and Elaine O'Connor ("Appellees"), Mickey O'Connor ("the Debtor") and O'Connor Construction, Inc. ("OCC") entered into an option contract for the purchase of Clover Contractors, Inc ("Clover").  The O'Connors contracted to sell Clover to O'Connor Construction, Inc. ("OCC") with the Debtor as OCC's surety.  The contract required OCC to make five annual payments of $20,000 to  Appellees beginning in 1982 and a final payment of $830,528 in 1987.  Clover went bankrupt during the term of the option contract.

In 1984, OCC defaulted on its annual payment and made no other payments on the option.  On April 14, 1987, Appellees sued OCC as principal obligor for default, the Debtor, as guarantor, and his former wife.  The suit was dismissed for abandonment in 1995.

Debtor filed for bankruptcy under Chapter 11 on May 14, 1987. Appellees filed two proofs of claim, one on November 18, 1987 and the other on January 25, 1989, for payments remaining due under the option contract and for interest.

The Trustee objected to the proofs of claim contending 1) the option contract was a sham transaction and 2) that Appellees' claims were prescribed.  The bankruptcy court found no evidence to support the Trustee's contention that the contract was a sham.

Further, it concluded that Appellees' claims were not prescribed because the proofs of claim interrupted prescription of Debtor's obligation under LA. CIV. CODE ANN. art. 3060 (West 1994). The district court affirmed, and Trustee appeals. He argues that the Appellees, as insiders[1] under 11 U.S.C. § 101(31)(A)(I), should have had the burden of proving that the option contract was an arms length transaction. Second, he argues that LA. CIV. CODE art. 1899 (Repealed) compels this Court to reject Appellees' proofs of claim. Alternatively, he argues that Appellees claims' have prescribed.

**STANDARD OF REVIEW**

We review the district court's decision by the same standard it applied to its review of the bankruptcy court's decision: findings of fact for clear error and conclusions of law <u>de</u> <u>novo</u>. <u>Matter of Kennard</u>, 970 F.2d 1455, 1457 (5th Cir. 1992); <u>In re United States Abatement Corp.</u>, 79 F.3d 393, 397 (5th Cir. 1996).

**I.**

The first issue is whether Appellees had the burden of proving that the option contract was an arms length transaction. The Trustee cites <u>In re All-American Auxiliary Assoc.</u>, 95 B.R. 540, 544 (Bankr. S.D. Ohio. 1989), to support his argument that the burden is on the insider-claimant to show the inherent fairness and good faith of the transaction. The Trustee misapprehends the holding of that case.

---

[1]The O'Connors are Mickey O'Connor's parents.

3

Properly filing a proof of claim constitutes prima facie evidence of the claim's validity and amount.  Rule 3001(f).  If the Trustee objects, it is his burden to present enough evidence to overcome the prima facie effect of the claim.  Brown v. Internal Revenue Serv., 82 F.3d 801, 805 (8th Cir. 1996).  If the Trustee succeeds, the creditor must prove the validity of the claim.  In re Hemingway Transport, 993 F.2d 915, 925 (1st Cir. 1993).  In All-American Auxiliary, the court applied heightened scrutiny only because the Trustee satisfied his burden.  In re All-American Auxiliary, 95 B.R. at 545.  Here, the Trustee did not satisfy his burden.  Also, All-American Auxiliary concerned "services" under 11 U.S.C. § 502(b)(4), not a question of "insider" dealings.

The Trustee argues that the terms of the contract show that it is a sham.  We disagree.  As the district court pointed out, two of the five annual payments were made.  We cannot hold that the bankruptcy court's determination that the option contract was at arms length was clear error.

## II.

We next examine the Trustee's argument that Louisiana Civil Code Article 1899[2] (Repealed)[3] compels us to reject Appellees'

---

[2]LA. CIV. CODE ANN. art. 1899 (West 1973) provided:

[I]f the contract consists of several successive obligations to be performed at different times, and the equivalent is not given in advance for the whole, but is either expressly or impliedly promised to be given at future periods; then, if the cause of the contract, corresponding to either of the successive obligations, should fail, the obligation depending on it will cease also.  Thus,

4

claim.  Article 1899 provided that if a successive obligation fails, then the depending obligation also fails.  The article gives as an example a landlord/tenant situation in which the leased property is destroyed.  Once the property is destroyed, the tenant is no longer obliged to pay rent.

The Trustee argues that once Clover went bankrupt and its stock became valueless, OCC was no longer obliged to pay on the option to purchase it.  Thus, the Trustee argues, if OCC was not obliged to pay, then Debtor, as OCC's guarantor, was likewise no longer obliged to pay.

We agree with the district court that Article 1899 does not apply here because the option contract does not create successive obligations.  The Trustee contends that Appellees had even greater future obligations than the landlord in the example; once the landlord delivers possession, only the tenant owes performance. This argument is patently incorrect. A landlord owes his tenant three duties:  1) to deliver the property; 2) to maintain the property; 3) to cause the tenant to be in peaceable possession during the lease.  LA. CIV. CODE ANN. art. 2692 (West 1994).  These

---

in leases for years, the obligation to pay the yearly rent ceases, if the property which is leased should be destroyed.

[3]Because old article 1899 was in effect at the time the contract was made, we must apply it here. Morris v. Friedman, 663 So.2d 19, 23-24 (La. 1995) (holding that to the extent that Act 331 of 1984 changed any substantive provisions of the pre-existing law, courts must follow the law in effect at the time the contract was executed).

obligations continue for as long as the lease is in effect. Here, the Appellees had to perform only once when OCC completed its payments. Once OCC made all its required payments and once Appellees tendered their stock, Appellees no longer owed OCC or Debtor any duty. Thus, Appellees, unlike a landlord, were not successively obligated.

### III.

Finally we consider whether Appellees' claims are prescribed. In Louisiana, the prescriptive period for breach of contract is ten years from the date of the breach. LA. CIV. CODE art. 3499 (West 1994). Here, OCC defaulted in 1984. Thus, unless the prescriptive period was interrupted, the claim prescribed in 1994.

Under LA. CIV. CODE ANN. art. 3462 (West 1994), prescription is interrupted when

> ". . . the obligee commences action against the obligor in a court of competent jurisdiction and venue...."

The Louisiana Supreme Court has interpreted this article to mean that a petition notifying a defendant of legal demands for a particular event interrupts the prescriptive period. Parker v. Southern America Ins. Co., 590 So.2d 55, 56 (La. 1991).

The bankruptcy court correctly held, and the district court agreed, that Appellees' proofs of claim were sufficient to interrupt prescription against the debtor. As the district court noted, there is no clear legislation on this particular issue.

6

However, the Louisiana legislature has specifically allowed proofs of claim to suspend prescription in succession proceedings. LA. CIV. CODE CIV PRO. art. 3245 (West 1994). By analogy, a proof of claim in a bankruptcy proceeding would also interrupt prescription.[4]

The Trustee argues that proof of claim in a succession proceeding suspends prescription only because the Louisiana legislature so provided. Without similar legislation for proofs of claim in bankruptcy proceedings, proof of claim cannot interrupt. We disagree.

We look to the Louisiana Supreme Court's holding in Parker for guidance. There, the plaintiff initially filed a worker's compensation suit also seeking monetary damages against her husband's employer based on her husband's death. Parker, 590 So.2d at 56. The case was dismissed for failing to state a cause of action. Three years after her husband died, plaintiff sued Southern American Insurance Company, the employer's insurer, seeking damages for her husband's death despite the Louisiana prescriptive period of one year from the date of injury. The question before the Supreme Court was whether the first suit interrupted prescription. Id. The Supreme Court first noted that "when a petition notifies a defendant that legal demands are made

_____

[4]For our purposes, the distinction between suspension of prescription and interruption of prescription is of no importance, and the parties do not contend otherwise.

7

for a particular occurrence, prescription is interrupted." <u>Id.</u> It ultimately held that the first suit served as notice that the employer and his insurer were potentially liable on a tort claim arising from the husband's death. The Supreme Court reasoned that a compensation suit does not exclude the concept of fault. Rather, it gives the employer a shield against tort liability. Thus, because the first suit held that there was no compensation coverage, the employer and his insurer were aware of potential tort liability. <u>Id.</u>

The key to <u>Parker</u> is that the defendant there received *notice*. Here, the proof of claim put the Debtor on notice that he may be liable for OCC's payments to Clover. Thus, because notice interrupts a prescriptive period and because the proofs of claim were proper notice, the ten year prescriptive period was interrupted with the filing of the two proofs of claim in 1987 and 1989, respectively.[5]

Because the prescriptive period against the Debtor was interrupted, we must decide whether the interruption was also sufficient against the principal obligor, OCC. If the principal

---

[5]We note that <u>Hilbun v. Goldberg</u>, 823 F.2d 881 (5th Cir. 1987) held that plaintiff's proof of claim for net proceeds in an auction house's bankruptcy proceeding did not serve to interrupt prescription in a tortious conversion suit against the auction house's employee. The court held that the proof of claim was insufficient to interrupt prescription because the claim against the employee was not part of the obligation claimed in the bankruptcy proceeding. <u>Id.</u> at 884. <u>Hilbun</u>, though, is distinguishable. Appellees' proofs of claim are for the Debtor's obligation.

8

obligation is prescribed, then the surety's obligation is unenforceable. LA. CIV. CODE ANN. art. 3059 (West 1994).

Article 3060 states in pertinent part:

> The interruption of prescription against a surety is effective against the principal obligor and other sureties only when such parties have mutually agreed to be bound together with the surety against whom prescription was interrupted. LA. CIV. CODE ANN. art. 3060 (West 1994).

While this article was not in effect when the option contract was made, it is retroactive because the statute addresses prescription so it is procedural. Chance v. American Honda Motor Company, 635 So.2d 177, 178 (La. 1994). Further, Article 6 of the Louisiana Civil Code states that procedural laws apply prospectively and retroactively unless the legislature has expressed otherwise, which it has not.

To determine whether prescription against OCC has been interrupted, we must decide whether OCC and the Debtor are mutually bound. The option contract provides that the Debtor personally guarantees all of OCC's obligations thereunder. The Debtor signed the option contract as the guarantor. As a result, we hold that the Debtor and OCC mutually agreed to be bound together. Therefore, when the proofs of claim interrupted prescription against the Debtor, they also interrupted prescription against OCC.

The Trustee argues that comment (c) to Article 3060 shows that the legislature intended for the article to apply to parties bound "in solido". Further, Article 3045, in effect at the time the

9

parties contracted, treated sureties as secondarily liable unless they had expressly agreed to be bound <u>in</u> <u>solido</u>.  The Trustee contends that the parties did not agree to be bound solidarily; so, the proof of claim against the Debtor does not interrupt the prescriptive period against OCC.

We disagree.  If the legislature intended Article 3060 to apply only to those parties who are bound <u>in</u> <u>solido</u>, then it could have so stated.  Instead, the legislature used the term "mutually agreed to be bound".  We assume that the legislature meant what it said.  Because the Debtor and OCC mutually agreed to be bound, Article 3060 applies.  The prescriptive period against OCC was interrupted with the filing of the proof of claim.

## CONCLUSION

For the above reasons, we AFFIRM the bankruptcy and district courts.